IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MARQUIZIO CLINE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:21-cv-00150-SNLJ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on petitioner Marquizio Cline's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1).  For the reasons stated below, the Court will deny the motion without an evidentiary hearing because the record conclusively establishes that petitioner is not entitled to relief.

## I.  BACKGROUND

Cline was indicted by the Grand Jury for the Eastern District of Missouri on November 5, 2019 on a charge of being a convicted felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1).  *United States v. Cline*, 1:19-cr-00170-SNLJ (E.D. Mo.), Doc. 1.[1]  The maximum penalty for that charge is imprisonment of not more than 10 years and a fine of not more than $250,000.  18 U.S.C. § 924(a)(2).

---

[1] All citations to the record refer to the underlying criminal case, *United States v. Cline*, 1:19-cr-00170-SNLJ (E.D. Mo.), except as otherwise noted.

1

*Written Guilty Plea Agreement*

On June 22, 2020, Cline executed a written plea agreement with his counsel and the government, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). (Doc. 29). Cline acknowledged "having voluntarily entered into both the plea agreement and guilty plea" and that "[he], is in fact, guilty." (*Id.* at 11). Under the plea agreement, the government agreed "that no further federal prosecution would be brought in this District relative to the defendant's possession of ammunition or firearms on or about June 16, 25, 2019, of which the Government" was aware of at that time. (*Id.* at 1-2).

In the plea agreement, the parties agreed that, as to the charge of felon in possession of ammunition, the base offense level was found in Section 2K2.1 and depended on the defendant's criminal history and other factors therein. (*Id.* at 5). Relative to Chapter 3 Adjustments, it was also agreed that Cline should receive a three-level reduction for acceptance of responsibility pursuant to Section 3E1.1 (a) and (b). (*Id.* at 6). Cline waived all rights to appeal all sentencing issues so long as the Court accepted the plea and sentenced Cline to a term of imprisonment of 96 months. (*Id.* at 8).

Under the plea agreement, Cline stipulated and agreed to the following facts:

**A.    Status as a Felon**

Prior to January 5, 2019, defendant Cline had been convicted, and he knew he had been convicted, of the following felony offense, punishable by imprisonment for a term exceeding one year:

On December 18, 2014 in the Criminal/Circuit Court of Shelby County, Tennessee, in Case Number 13 06197, for the Class C Felony of Aggravated Assault.

### B. Possession of Ammunition

On June 5, 2019, after a high-speed pursuit involving a stolen gray Dodge Charger, law enforcement officers were notified that the Charger had crashed while trying to exit at I-55 Exit 19, in Pemiscot County, in the Eastern District of Missouri. After arriving at the scene of the crash, officers determined that Defendant Cline was the driver and sole occupant of the vehicle. He was taken into custody at that time. The vehicle was towed, and a search warrant was applied for and issued for the interior of the vehicle. During the search, officers discovered three 9mm shell casings inside the vehicle. One casing was in the driver seat, one was on the driver floor, and one casing was on the front passenger seat. Cline owned and knowingly possessed those 9mm shell casings found in the Charger.

During a post-arrest interview, and after being advised of his rights pursuant to Miranda, Cline admitted to taking the vehicle from Hayti, due to a big fight breaking out. As charged in the Indictment, on or about June 5, 2019, in Pemiscot County, within the Eastern District of Missouri, defendant Cline knowingly possessed the 9mm ammunition found in the Charger. Prior to June 5, 2019, Defendant Cline was convicted of at least one felony crime punishable by imprisonment for a term exceeding one year. At the time Defendant Cline possessed the aforementioned ammunition, he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year.

### C. Interstate Nexus

The 9mm ammunition referenced in the Indictment and knowingly possessed by Cline Smith, being one brass 9mm Luger shell casing with the head-stamp markings "WIN" and "9MM LUGER", and two steel 9mm Luger shell casings with the head-stamp markings "(dot) WIN (dot)" and "9MM LUGER," were manufactured in the state of Mississippi, and were "ammunition" as defined by federal law. Therefore, the ammunition traveled in and affected commerce prior to the discovery in Missouri.

(*Id.* at 3-4).

### *Change of Plea Hearing*

At the request of Cline's counsel, a Pre-Plea Disclosure Presentence Report was filed by the United States Probation and Parole Office on February 10, 2020. (Doc. 20).

3

On June 22, 2020, Cline appeared with his attorney before this Court and pled guilty to being a convicted felon in possession of ammunition as charged in the Indictment. (doc. 49). During the plea hearing, the Court made inquiry as to Cline's level of satisfaction with his attorney. (*Id.* at 6-7). Cline responded "Yes, sir" when asked: (1) if he was satisfied with the way his lawyer had handled his case; (2) whether she had investigated the case to his satisfaction; and (3) if she had done everything that he had asked her to do. (*Id.*). Finally, the Court asked if Cline had any "gripes or complaints whatsoever" about his attorney, and he said, "No sir." (*Id.* at 7).

Additionally, Cline said that he had signed, read, and gone over the plea agreement in detail with his lawyer. (*Id.* at 9). In the plea agreement, Cline agreed that he was:

> … fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

(Doc. 29 at 11).

The Court asked Cline, "[H]ave any promises been made by anyone to get you to plead guilty other than the promises set out in this plea agreement?" to which Cline replied "No, sir." (Doc. 49 at 9-10). Cline was also asked by the Court if the plea agreement is "the complete, full total agreement; right?" and Cline replied "yes." (*Id.* at 10).

### *Presentence Investigation Report*

The United States Probation Office prepared a Final Presentence Investigation Report. (Doc. 33). As indicated in the Offense Conduct section of the PSR, paragraphs 13-18, on June 6, 2019, in Pemiscot County, Missouri, Cline was responsible for the

4

following:

13. According to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) records, records of Pemiscot County, Missouri Sheriff's Office, and records of Portageville, Missouri Police Department, on June 6, 2019, in Pemiscot County, within the Southeastern Division of the Eastern District of Missouri, Marquizio D. Cline, having been previously convicted of a felony crime, possessed ammunition.

14. On June 6, 2019, officers were advised by dispatch that a shooting occurred in Portageville, Missouri and the suspect was driving a stolen Dodge Charger with Colorado license plates. Officers learned H.W.'s residence was shot at from a Dodge Charger that fled the area at a high rate of speed. Specifically, a witness reported hearing three gunshots before seeing the vehicle flee the area. The incident was captured on camera by home security. Further information revealed the suspect driver was wanted for questioning in a domestic assault and child endangerment that occurred on June 5, 2019. Further investigation revealed "Quizio" later identified as the defendant, was calling S.M., the daughter of H.W., and other family members of S.M., threatening to "put them in body bags." Officers located two bullet holes in the H.W.'s residence. One round of ammunition was recovered; however, the second round was not recovered. The Dodge Charger was located on Interstate 55 travelling south. Officers initiated their emergency lights to conduct a traffic stop and the driver fled at a high rate of speed. The vehicle reached speeds in excess of 130 miles per hour and fled in such a manner that created a substantial risk of serious physical injury or death. During the pursuit, the Dodge Charger flew off an overpass, struck the ground, and flipped over. The driver, identified as Cline, was taken into custody. A computer search of the vehicle revealed the Dodge Charger was reported stolen from Hayti, Missouri on June 5, 2019. A search of the vehicle revealed three spent nine millimeter casings. One casing was in the driver seat, one was on the driver floor, and one casing was on the front passenger seat. A firearm was not recovered.

15. The lab reports were requested, but not received. However, the parties agreed the 9mm ammunition referenced in the Indictment and knowingly possessed by Cline, being one brass 9mm Luger shell casing with the head-stamp markings "WIN" and "9MM LUGER", and two steel 9mm Luger shell casings with the head-stamp markings "(dot) WIN (dot)" and "9MM LUGER," were manufactured in the

5

  state of Mississippi, and were "ammunition" as defined by federal law. Therefore, the ammunition traveled in and affected commerce prior to the discovery in Missouri.

16. Investigation revealed the defendant had previously been convicted of felony charges punishable by a term of imprisonment exceeding one year.

17. According to the government, Cline is solely culpable for the instant offense.

18. On June 6, 2019, the defendant was arrested by Pemiscot County, Missouri Sheriff's Office. On November 7, 2019, Cline was transferred to the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives followed by the U.S. Marshals Service in Cape Girardeau, Missouri. State related charges for Resisting Arrest under Docket No. 19PE-CR00690-02 in the Circuit Court of New Madrid County are pending. In addition, two counts for Unlawful Use of a Weapon and two counts of Armed Criminal Action under Docket No. 19NM-CR00545-01 in the Circuit Court of New Madrid County are also pending. Further, state related charges for Tampering with a Motor Vehicle and Property Damage under Docket No. 19PE-CR00691-02 in the Circuit Court of New Madrid County are pending.

(Doc. 33 at 4-5).

The PSR provided that Cline's Base Offense Level was 20. (*Id.* at 6). Four levels were added for possessing a firearm in connection with another felony offense. (*Id.*). Another two levels were added for obstruction of justice for recklessly causing a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. (*Id.*). A three-level reduction for acceptance of responsibility brought his total offense level to a 23. (*Id.*).

Cline's total criminal history score was four, which established a criminal history category of III. (*Id.* at 9). At time of sentencing, Cline's most recent felony conviction was for the felony of aggravated assault in the Criminal Court for Memphis, Tennessee,

6

Docket Number 13-06197. (*Id.*). On December 18, 2014, Cline was sentenced to six years in prison. (*Id.*). He was released from custody on April 2, 2017. (*Id.*). The circumstances of that offense were as follows:

> According to court records, on June 29, 2013, in Shelby County, Tennessee, the defendant, unlawfully and knowingly committed an assault on A.J., and used or displayed a deadly weapon and caused bodily injury to A.J. Charges for Employ Firearm with Intent to Commit Felony, and three counts for Criminal Attempt-Second Degree were dismissed. According to the complaint, on June 29, 2013, C.C. received a call from a male who identified himself as "Quizio," who was later identified as the defendant. During the telephone call the defendant threatened to shoot and kill C.C. and anyone associated with him. Ten minutes later, a vehicle pulled into C.C.'s apartment complex and fired five shots at two males and two children ages ten and two. The ten year old was shot in the ankle. The defendant then called C.C. and stated, "man you need to check on your family." The defendant was positively identified as the shooter in a photographic lineup and taken into custody on July 9, 2013.

(*Id.*).

Based on a total offense level of 23 and a criminal history category of III, Cline's guideline imprisonment range was 57 months to 71 months. (*Id.* at 15). The statutory maximum term of imprisonment on Count I was 10 years of imprisonment based on 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). (*Id.*).

### *Sentencing Hearing*

Prior to sentencing, Cline's counsel filed a Sentencing Memorandum, requesting the Court sentence Cline to an upward variance of 94 months (typographical error corrected during the hearing to 96 months) based on the parties' joint recommendation in their binding plea agreement. (Docs. 36, 51). Cline's counsel noted that "[t]he parties arrived at the joint recommendation in the binding plea agreement after discussions regarding the

7

likelihood of the government requesting an upwards variance based on the underlying facts of the offense conduct." (Doc. 36).

During the sentencing hearing on September 23, 2020, the Court adopted as its findings of fact the factual statements in the PSR. (Doc. 51 at 3). The Court also adopted, as its additional findings, the Sentencing Guidelines calculations in the PSR of a Total Offense Level of 23, a Criminal History Category of III, and sentencing guidelines range of 57-71 months. (*Id.*). The Court accepted the parties' agreement pursuant to Rule 11(c)(1)(C) for Cline to be sentenced to 96 months, representing an upward variance. (*Id.* at 4-5). During the sentencing hearing, the Court expressed its willingness to accept the parties' binding plea agreement, but remarked "[F]rankly, Mr. Cline, given the consequences of – or given the circumstances, I should say, of the offense, it's pretty lenient, but I'm willing to follow it nonetheless." (*Id.*).

### *Appeal*

Cline did not file a direct appeal.

### *28 U.S.C. § 2255 Motion*

On October 12, 2021, Cline filed the instant motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, alleging he was denied effective assistance of counsel in two grounds. For ground one, Cline alleges that he was denied effective assistance of counsel because "96 months excede my guidelines, and I was sentence 60 months extra with my maximum of 36 months. I was told by 96 months was a good deal and to take it would stop me from being careered out with a max sentence of 15 years. I do not fall under the ACA." (2255 Motion, p. 4) (errors in original). For ground two, Cline

8

alleges he was denied effective assistance of counsel because "My lawyer Jennifer Booth of the Federal Public Defender's Office of Cape Girardeau, MO, advised me to take the 96 months, because of my background history. (2255 Motion, p. 5).

## II. LEGAL STANDARDS

### *28 U.S.C. § 2255*

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on grounds that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Section 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To obtain relief under § 2255, the petitioner must establish a violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)). The petitioner bears the burden of proof as to each asserted ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion unless "the motion, files, and records of the case conclusively show that the movant is not entitled to relief." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (citing 28 U.S.C. § 2255(b)). The motion "can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations

9

cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. U.S.*, 68 F.3d 238, 240 (8th Cir. 1995).

### *Ineffective Assistance of Counsel Claims*

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove a claim of ineffective assistance of counsel, the petitioner must show that his counsel did not perform to the degree of skill of a reasonably competent attorney, and as a result, he was prejudiced. *Id.* at 687. Failure to satisfy either of the *Strickland* prongs [performance or prejudice] is fatal to the claim. *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) ("If the petitioner makes an insufficient showing on one component, the court need not address both components.").

"*Strickland*'s first prong sets a high bar." *Buck v. Davis*, 580 U.S. 100, 118 (2017). The Court "will not find an attorney's performance constitutionally deficient unless it is outside the "wide range of reasonable professional assistance." *Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020) (citing *Strickland*, 466 U.S. at 689). "It is only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment that *Strickland*'s first prong is satisfied." *Id.* (citing *Buck*, 580 U.S. at 118-119). The Court makes "every effort to eliminate the "distorting effects of hindsight" and consider performance from counsel's perspective at the time." *Id.* (quoting *Strickland*, 466 U.S. at 689). The starting point for this analysis is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional

10

assistance." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (internal citation omitted). A petitioner "bears the burden to overcome the strong presumption that counsel's performance was reasonable." *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013).

A court need not determine whether a movant meets the performance prong of *Strickland*, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Strickland*, 466 U.S. at 697. "[T]he prejudice prong requires proof that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different." *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (internal citation and quotation marks omitted). This inquiry depends on the likelihood of success if the alleged error were corrected." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Where a claim of ineffective assistance of counsel hinges on the failure of counsel to file a pretrial motion, a petitioner cannot prove prejudice if there is no reasonable probability that the motion would have been successful. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). Counsel's failure to advance a meritless argument cannot constitute ineffective assistance of counsel. *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).

Generally, to establish prejudice where a defendant has entered a guilty plea, "the [m]ovant must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014) (quoting *Hill*, 474 U.S. at 59). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post-conviction

11

proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). Where the petitioner states on the record that he is satisfied with his lawyer, that no threats or promises had been made to induce him to plead guilty, and admits his guilt, he has a heavy burden to overcome those admissions and show that his plea was involuntary. *Nguyen*, 114 F.3d at 703.

### III. DISCUSSION

For both grounds in his motion, Cline asserts his counsel was ineffective because she encouraged him to accept a sentence of 96 months imprisonment, which exceeded his guidelines range of 57-71 months. He alleges that he was erroneously advised by counsel that unless he took a deal for 96 months imprisonment, he would be sentenced to fifteen years imprisonment for being an armed career criminal. Under *Strickland*, for Cline to be successful on his claims of ineffective assistance of counsel, he must first show his counsel's performance was deficient.

Cline's counsel negotiated a binding plea agreement to avoid the government having the right to ask for a higher sentence based on the circumstances of the case. As set forth in the Sentencing Memorandum filed by defense counsel, she was concerned that, based on the facts of the case, Cline might be sentenced to a term of imprisonment greater than 96 months, unless the parties entered into a binding plea agreement. (Doc. 36) ("The parties arrived at the joint recommendation in the binding plea agreement after discussions regarding the likelihood of the government requesting an upwards variance based on the

12

underlying facts of the offense conduct.").

Cline's conduct immediately prior to and during the commission of his offense justified a significant upward variance in his sentence. Cline's involvement in possessing a stolen vehicle, shooting at a residence before fleeing the area at a high rate of speed, then evading officers during a high-speed pursuit at speeds in excess of 130 miles per hour, thereby creating a substantial risk of serious risk injury or death, justified the 96-month term of imprisonment agreed to by the parties, and imposed by the Court. Cline's counsel very effectively reduced Cline's risk of receiving a sentence greater than 96 months by negotiating a favorable binding plea agreement.

Cline's claim that counsel told him to take a sentence of 96-months imprisonment or he would be sentenced as an armed career criminal is refuted by the record. At the request of Cline's counsel, a Pre-Plea Disclosure Presentence Report was filed by the United States Probation and Parole Office on February 10, 2020. (Doc. 20). In that report, Cline had a Total Offense Level of 26, a Criminal History Category of III, and a recommended Guidelines Range of 78-97 months imprisonment. (*Id.* at 10). No mention was made in the Pre-Plea Presentence Report that Cline was an armed career criminal. Over four months before he pled guilty to the charged offense and signed the plea agreement, Cline was informed he was not an armed career criminal. The primary difference between the Pre-Plea Presentence Investigation Report filed on February 10, over four months before he pled guilty, and the Final Presentence Investigation Report filed after Cline pled guilty, was that Cline received a three-level reduction of his offense level for acceptance of responsibility. (Doc. 33 at 6).

Cline has not shown his counsel made any errors to support his claims of ineffective assistance of counsel because he received an upward variance from a guideline range sentence of 57-71 months imprisonment, to a binding sentence of 96 months imprisonment. Cline fails to show "the counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Accordingly, counsel was not ineffective for negotiating a binding agreement limiting the Government's otherwise unfettered ability to request a maximum statutory sentence of ten years imprisonment.

To meet the second prong of the *Strickland* test, Cline would have to show there was a reasonable probability that, but for his counsel's errors, he would have received a sentence less than 96 months. *Coleman v. United States*, 750 F.3d 734, 739 (8th Cir. 2014), (quoting *Jeffries v. United States*, 721 F.3d 1008, 1014 (8th Cir. 2013) (stating that prejudice in the context of sentencing is proven "by demonstrat[ing] a reasonable probability that his sentence would have been different but for the deficient performance."). "A reasonable probability is a probability sufficient to undermine confidence in the outcome or a substantial, not just conceivable, likelihood of a different result." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044-45 (8th Cir. 2019) (citation and interior quotation omitted). A "mere possibility of prejudice" does not meet the actual prejudice threshold needed to establish an ineffective assistance of counsel claim. *See Prewitt v, United States*, 83 F.3d 812, 819 (7th Cir. 1996) (defendant's counsel's failure to raise a § 5G1.3(c) motion created only a possibility of prejudice and did not qualify as actual prejudice to support an ineffective assistance of counsel claim).

14

Cline has not established that he would have received a shorter sentence had he not agreed to a plea agreement for a sentence of 96 months. To the contrary, Cline likely would have received a sentence greater than 96 months but for the favorable plea agreement negotiated by counsel. As stated by this Court during the sentencing hearing, the 96-month sentence was lenient under the circumstances. Without the binding plea agreement, the government could have sought an upward variance greater than 96 months based on the facts and Cline's criminal history. The instant offense conduct included him possessing a stolen car, shooting into a residence, and leading officers on an exceedingly dangerous pursuit at speeds exceeding 130 miles per hour. His criminal history includes him committing an aggravated assault by firing five shots at two adults and two children (ages two and ten) and hitting one child in the ankle, after threatening to shoot and kill an individual and anyone associated with him.

The mere possibility this Court *could* have imposed a lesser sentence for Cline had he not jointly stipulated to a 96-month sentence, falls far short of establishing actual prejudice. As such, the threshold requirement for prejudice has not been.

## IV. CONCLUSION

Cline has not demonstrated any errors by counsel that fall outside the wide range of reasonable professional assistance. Nor has he established any prejudice that he suffered as a result of any alleged deficiencies in counsel's performance. There is no reasonable probability that Cline would have received a shorter sentence than 96 months. In fact, as stated by this Court during the sentencing hearing, the sentence was lenient under the circumstances. Cline would have likely received a sentence greater than 96

15

months but for his favorable plea agreement negotiated by his counsel. As a result, his claims of ineffective assistance of counsel fail both prongs of the *Strickland* test.

Finally, Cline is not entitled to a hearing on the instant motion because his allegations are conclusively refuted by the record, inherently incredible, and consists of speculation and conclusions.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is **DENIED** without a hearing and this matter is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that the government's Motion to Dismiss is **DENIED as moot**.

**IT IS FURTHER ORDERED** that petitioner's motion for a copy of the transcripts (Doc. 3) is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability as to any of the claims raised in the § 2255 motion because petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

**SO ORDERED** on this 30th day of October, 2024.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE